UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA

        -against-                                        S1 04 Crim. 0070 (LAK)

SALVATORE SCALA and THOMAS SASSANO,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

        Joon H. Kim
        Christopher P. Conniff
        OFFICE OF THE UNITED STATES ATTORNEY
        FOR THE SOUTHERN DISTRICT OF NEW YORK
        *Attorneys for the United States*

        Bruce A. Barket
        THE LAW OFFICES OF BRUCE A. BARKET, P.C.
        *Attorneys for Defendant Salvatore Scala*

        Ronald Rubenstein
        RUBENSTEIN & COROZZO, LLP
        *Attorneys for Defendant Thomas Sassano*

LEWIS A. KAPLAN, *District Judge.*

        Defendants Salvatore Scala and Thomas Sassano stand indicted for extortion and conspiracy to commit extortion, with Scala further charged with three counts of federal income tax evasion. The government now moves for an anonymous jury and certain other protective measures.

*Facts*

According to the superseding indictment, Scala and Sassano are respectively a captain and a soldier in the Gambino organized crime family.[1] A captain is allegedly "responsible for supervising the criminal activities of his crew and provid[ing] [s]oldiers and associates with support and protection" and in turn receives a share of his crew's illegal earnings.[2] A soldier is allegedly a "made" member of the crime family and participates in criminal endeavors.[3] Scala and his crew allegedly "engaged in extortions, illegal gambling, securities fraud, and making and collecting extortionate extensions of credit ('loansharking'), among other crimes."[4] In particular, Scala and Sassano are alleged to have extorted money from the owner and managers of the V.I.P. Club, a Manhattan business, from the mid-1990s until 2002.[5]

Scala was convicted on May 22, 2001 of conspiring to extort Cherry's Video, an adult entertainment club on Long Island, and was sentenced on November 2, 2001 to sixty-three months' imprisonment. The government contends that Sassano has taken over Scala's crew and criminal operations, including the extortion of the V.I.P. Club, during Scala's imprisonment.[6]

---

[1] *See* Superseding Indictment, ¶ 5.

[2] *Id.*, ¶ 4.

[3] *See id.*, ¶ 3.

[4] *Id.*, ¶ 5.

[5] *See id.*, ¶¶ 6-8.

[6] *See* Gov. Jury Reply at 1.

*Discussion*

The government moves for an anonymous jury. Specifically, it asks for an order that:

"(1) all prospective jurors on the *voir dire* panel, as well as the jurors and alternates ultimately selected, not to reveal their names, addresses, or places of employment; (2) the jurors be kept together during recesses and that the United States Marshals Service take the jurors to lunch, or provide them lunch, as a group each day throughout the trial; and (3) the United States Marshals Service transport the jurors together from the Courthouse each day to an undisclosed central location, from which they can leave for their respective communities."[7]

While the government points out that many courts in this district have granted such requests, empaneling an anonymous jury nevertheless is a measure that should be taken only with care. Because the Court is satisfied that the special circumstances of this case demonstrate the necessity for such action, and also because it is convinced that any prejudice to the defense can be dealt with through *voir dire* and a proper instruction to the jury, the government's motion is granted.

In the Second Circuit, an anonymous jury "may be warranted when the jury needs protection, as when the government has demonstrated a defendant's 'willingness . . . to tamper with the judicial process.'"[8] Extensive pretrial publicity in cases involving allegations of violent conduct may justify empaneling an anonymous jury.[9]

---

[7] Gov. Jury Mem. at 1.

[8] *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994) (quoting *United States v. Vario*, 943 F.2d 236, 239 (2d Cir. 1991), *cert. denied*, 112 S.Ct 882 (1992)).

[9] *See Thai*, 29 F.3d at 801; *United States v. Paccione*, 949 F.2d 1183, 1192 (2d Cir. 1991), *cert. denied*, 112 S.Ct 3029 (1992).

4

A district court should consider several factors when considering a motion for an anonymous jury, including whether the charges against the defendants are serious, whether there is a substantial potential threat of corruption to the judicial process, and whether considerable media coverage of the trial is anticipated.[10]  Here, these factors all weigh strongly in favor of the government's request.[11]

*Seriousness of Charges*

The defendants in this case are charged with two serious crimes, extortion and conspiracy to commit extortion.  The indictment alleges that Scala and Sassano used "actual and threatened force, violence, and fear" to extort money and property from the owners and managers of the V.I.P. Club.[12]  As a practical matter, the defendants, if convicted, could spend considerable time in prison.

Given the seriousness of the charges and the exposure of the defendants to long periods of incarceration, there are significant incentives to attempt to subvert the trial process by threats or violence.  Moreover, a jury, unless shielded, well could fear malevolent action by defendants accused of these crimes.

---

[10] *See, e.g., United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995); *Paccione*, 949 F.2d at 1192; *Vario*, 943 F.2d at 239.

[11] *See Aulicino,* 44 F.3d at 1116-17; *Thai*, 29 F.3d at 801.

[12] Superseding Indictment, ¶¶ 6, 8.

*Threat to Judicial Process*

The government has proffered substantial evidence that suggests a threat to the judicial process in this case, in particular evidence that Scala has a prior history of jury tampering. Salvatore Gravano, a former high-ranking member of the Gambino family, testified at another criminal trial that Scala helped Gravano bribe a juror in the trial of Eddie Lino, another Gambino family member.[13] Gravano testified also that Scala participated in the 1988 murder of Wilfred "Willie Boy" Johnson, a Gambino family associate suspected of cooperating with the government.[14] After Gambino family leaders learned that Johnson had provided information to the government, the leaders ordered Johnson's execution.[15] According to Gravano, Lino and Scala carried out the order by shooting and killing Johnson.[16]

This information is doubly significant. First, it suggests the existence of a real threat to the trial. Second, it raises a substantial risk that the jurors, absent anonymity, would fear reprisal. Indeed, based on the same proffer from the government, the Second Circuit upheld a grant of an

---

[13] *See* Gov. Jury Mem. at 2.

[14] *See id.*

[15] *See id.* at 2-3.

[16] *See id.*

anonymous jury in Scala's recent trial in the Eastern District.[17] Hence, the second factor is satisfied.[18]

*Publicity*

Judging from the amount of publicity that this case has received to date, the Court is confident in holding that the publicity that the trial is likely to receive militates in favor of granting an anonymous jury. Numerous press reports appeared with regard to the indictment and the upcoming trial was described three weeks ago in an article recounting the December 1985 slaying of Gambino family leader Paul Castellano.[19] Given the amount of press coverage that organized crime traditionally has received, the profile of the trial is likely to become higher. In short, this case has received, and likely will continue to receive, substantial coverage in the media.

---

[17] *See United States v. Carneglia*, 47 Fed. Appx. 27, 31-32 (2d Cir. 2002).

[18] Sassano argues that the government's proffer relates only to Scala's behavior, not to his own and, in consequence, that there is no basis for an anonymous jury in his case. He thus moves for a severance if the Court grants the government's motion. *See* Sassano Mem. at 1-2. The government responds that it has evidence that Sassano, a loyal soldier, has taken over Scala's crew and criminal operations during Scala's incarceration, thus giving Sassano an incentive to tamper with the jury in his own and Scala's interests. *See* Gov. Reply Mem. at 1-2. Further, Sassano overlooks the case law holding that "where one co-defendant warrants an anonymous jury, the other co-defendant's due process rights are not violated by a refusal to sever." *Carneglia*, 47 Fed. Appx. at 32; *see also Aulicino*, 44 F.3d at 1117 (defendant's due process rights not violated by anonymous jury despite lack of evidence that he in particular sought to obstruct justice); *United States v. Locascio*, 357 F. Supp. 2d 558, 564 (E.D.N.Y. 2005) (where there was sufficient evidence that a co-defendant's actions merited an anonymous jury and the court provided a non-prejudicial reason for anonymity, "severance is not mandated because the defendant in particular had not sought to obstruct justice").

[19] *See* Gov. Jury Mem., Ex. A.

The defense asserts that anonymity would limit their ability to conduct *voir dire* and use their preemptory challenges effectively, and would implicate Scala and Sassano's presumption of innocence by implying that the defendants are dangerous people from whom the jurors must be protected.[20] While these are valid concerns, defendants overstate their case.

As for *voir dire* and preemptory challenges, the government's request would not limit inquiry into the occupations of the jurors, only information about their specific places of employment. The defense therefore would have access to information about the jurors' occupations for use in determining preemptory challenges. Further, the motion seeks only to preclude the disclosure of jurors' names and "addresses." The Court intends to inquire as to the county in which each prospective juror resides. Moreover, the defense will have ample opportunity to suggest areas of inquiry for *voir dire*. Thus, the defense should have no problem in assessing the possible bias of prospective jurors.

Finally, the Court will present a neutral explanation to the jury for their anonymous status that will seek to preclude any negative inferences against the defendants. Such an instruction will adequately protect the defendants from prejudice.[21]

---

[21] *See, e.g., Thai*, 29 F.3d at 801; *Paccione*, 949 F.2d at 1193; *United States v. Tutino*, 883 F.2d 1125, 1133 (2d Cir. 1989), *cert. denied*, 493 U.S. 1081 (1990).

*Conclusion*

The government's motion for an anonymous jury is granted. Sassano's alternative cross-motion to sever is denied.

SO ORDERED.

Dated: December 21, 2005

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)