UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

       -against-                                       04 Crim. 0070 (LAK)

SALVATORE SCALA and THOMAS SASSANO,

       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge*.

       Defendants Scala and Sassano were convicted of extortion of the V.I.P. Club, a Manhattan strip club, and conspiracy to commit that extortion. Scala was convicted also of four counts of tax evasion. Defendants move for judgment of acquittal or, alternatively, a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33, respectively. In fact, however, their joint memorandum argues for judgment of acquittal only of Sassano. The principal focus of the motion is Scala's claim that he is entitled to a new trial because the government improperly referred to Scala's prior conviction for extortion on cross-examination of a defense witness.

*Sassano's Argument for Judgment of Acquittal*

       Sassano argues that the evidence was insufficient to permit a conclusion that he extorted or conspired to extort money from the owners of the V.I.P. Club. Def. Joint Mem. [docket item 163] 31-33. This contention is utterly without merit. As the government argues, the jury was entitled to find

> "that Sassano 't[ook] over' [Scala's extortion of the V.I.P. Club] for Scala when Scala was arrested (Tr. 576); that Sassano introduced himself to Kapson as the person who 'worked for' Scala (Tr. 1072); that Sassano's personal mafia protégé, Billy Piano, collected cash from the extortion victims in a secretive fashion, in the bathroom of a nearby restaurant (Tr. 577-78); that Piano, in turn, delivered that cash to Sassano, at times in a secretive fashion (Tr. 577-78; GX 52; GX 301, 302, 322); that Sassano delivered portions of that cash to Scala (GX 322); that Sassano told Aslan that he "would not hurt [Aslan] as long as [Aslan] cooperated with them" (Tr. 621); that Sassano threatened and berated Kapson after Kapson announced that Kapson's mob underlings had to be fired (Tr. 1086-88); that Sassano's lawyer made

a threatening phone call to the executor of the Marchello estate (Tr. 1262-63); and that Sassano received none of the proceeds from the sale of the Club, and never asserted any legal right to those proceeds in a civil suit after the sale (Tr. 1511-12)." Gov. Mem. [docket item 164] 20-21.

*Motion for a New Trial*

A.   *Reference to Scala's Prior Extortion Conviction*

Scala called Bruce Barket, Esq., as a defense witness in an effort to establish that he had not filed tax returns because the FBI had seized certain records that allegedly would have been needed to complete the returns. On cross-examination, the government asked Barket whether he had told Scala not to file the returns for other reasons. Tr. 1353. Barket said that he had no idea where Scala's income came from. *Id.* 1354. The government then asked Barket whether he was aware that Scala was extorting money from Cherry Video. Scala did not object, and Barket said that he believed that Scala had not extorted Cherry Video. *Id.* The prosecutor then retorted, "Despite the fact that a jury convicted him on that case?" Scala then objected and moved for a mistrial. The objection was sustained and the jury told to disregard the question, but a mistrial was denied. *Id.* A renewed motion for a mistrial was denied shortly thereafter. *Id.* 1361.

On the following trial day, the Court further instructed the jury as follows:

"Members of the jury, you obviously now heard that there was a sentencing proceeding. And there has been some reference, at various points in the trial, to a previous trial and previous accusations. Mr. Scala is on trial in this case only for the charges in this indictment. You may not consider any previous charges or any previous results that you may have heard about, in any way, in determining his guilt or innocence of the charges here. Those are separate matters. They're in the past. They're gone. It has been impossible to tell the story of the case without some reference to it. But you may not draw the inference, for example, that because there were previous problems, he is more likely than not guilty here or anything like that. You have to decide this case solely on the basis of whether the government proves, in this case, beyond a reasonable doubt, that he is guilty of the charges in this indictment, and this indictment alone." *Id.* 1697-98.

The Court's final charge to the jury reiterated this instruction. *Id.* 1893-94. Nevertheless, Scala now seeks a new trial on the ground that the government's reference to the prior conviction in a question that never was answered and that the jury was told to disregard was unduly prejudicial.

Reference to a defendant's criminal record for the purpose of establishing a propensity to commit crimes is inappropriate. Hence, where such a reference serves no other purpose, it is improper and *may* be ground for a mistrial or, in the event of a conviction, a new trial.

*E.g.*, *United States v. Manafzadeh*, 592 F.2d 81, 89 (2d Cir. 1979). But it is important to consider this in context.

As an initial matter, the fact that Scala had previous criminal difficulties necessarily was a part of this case because the government claimed that (1) Scala stopped collecting the extortion payments directly and that Sassano started having them picked up because Scala was arrested in another case, and (2) Scala, following the arrest, demanded more money because he had to pay his lawyer for defending the other case. *Id.* at 30-31. Scala did not object to the government's eliciting from one alleged victim-witness the fact that Scala insisted on increased payments to help defray Scala's legal expenses in connection with those other criminal charges. *Id.* at 570-71. Nor did he object to cross-examination by Sassano's counsel that sought to fix the time of certain events with reference to Scala's previous arrest and incarceration. *E.g.*, *id.* at 740-41, 743. On Scala's cross-examination of another government witness, Scala asked whether the witness had visited Scala while Scala was in jail. *Id.* at 906. And Scala called as a witness a civil attorney who had represented him previously and adduced from the attorney that Scala had been in jail at the time of the representation. *Id.* at 1502.

But the *piece de resistance* came when Scala called Mr. Barket, his lawyer in the Cherry Video extortion case in which Scala previously had been convicted, and elicited from him the fact that Barket had represented Scala in "that other criminal case" and that the court in that case had requested certain financial records from Scala during "a sentencing proceeding going on with Mr. Scala." *Id.* at 1348. Thus, it was Scala himself who put before the jury the fact that he had a prior *conviction*, and he did it before the government asked the questions that underlie this motion. The government's questions, had they elicited affirmative answers, would have added only that the prior conviction was for extortion and that the victim was Cherry Video.

The reference to the fact that the prior conviction was for extortion should not have been made. But the reference was inadvertent in the sense that the prosecutor was carried away momentarily in a context in which the fact of a prior conviction was common ground among the parties and to which Scala opened the door by calling Barket and seeking to establish that Barket told him not to file tax returns. In any case, the Court finds that the repeated curative instructions were more than adequate to avoid any prejudice.[1] *See, e.g.*, *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (jury presumed to follow instruction to disregard inadmissible evidence absent "overwhelming probability" of inability to do so (citing *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)); *accord United States v. Castano*, 999 F.2d 615, 618 (2d Cir. 1993); *see also United States v. Minicone*, 960 F.2d 1099, 1109 (2d Cir. 1992) (no reversal of conviction based on witnesses' allusions to criminal conduct not charged in the indictment where district court struck the testimony and instructed the jury to disregard it).

---

[1] Defendants' motion asserts that evidence of the fact that the prior conviction was for extortion was admitted into evidence. *See* Def. Joint Mem. 17. That is not correct. The Court sustained defense objections to the objectionable cross-examination questions.

4

B.   *Aslan Testimony Concerning Vargo's Statements*

The individual who in fact turned over allegedly extortionate payments to Scala and others was John Vargo, who died before trial. The government called Vargo's partner, Steve Aslan, who prepared most of the extortion payments for Vargo prior to Vargo's turning them over to the defendants and their associates and made other payments himself. It sought to elicit from Aslan testimony concerning various statements made to him by Vargo, notably Vargo's statement that Vargo had to pay Scala to "keep the peace." Tr. 542-43. The Court received this evidence over objection for the limited purpose of demonstrating Aslan's state of mind but not for the purpose of demonstrating the state of mind of Vargo and gave an appropriate limiting instruction. *Id.* at 543.

Aslan's state of mind was squarely in issue, as it was the government's burden to demonstrate that he performed his role in paying off the defendants out of fear. The testimony was properly received for the limited purpose for which it was offered.

C.   *Other Grounds*

Defendants make a number of other arguments. I have considered them all and concluded that they lack merit.

*Conclusion*

For the foregoing reasons, defendants' joint motion for judgment of acquittal or, alternatively, a new trial [docket item 163] is denied in all respects.

SO ORDERED.

Dated:   May 30, 2007

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)